UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **JOAN M LEVESQUE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case Number  2:10-CV-1157-SLB |
| | ) |
| **EBSCO INDUSTRIES, INC.,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is presently pending before the court on defendant's Motion for Summary Judgment. (Doc. 20.)[1] Plaintiff Joan LeVesque has sued her former employer, defendant EBSCO Industries, alleging that defendant discriminated against her on the basis of her gender, age, and disability. Plaintiff also alleged that defendant interfered with her right to take medical leave in violation of the Family and Medical Leave Act ["FMLA"], and that it retaliated against her for exercising her right to medical leave. Defendant contends that plaintiff has released these claims. (Doc. 21 at 18.)[2] Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that defendant's Motion for Summary Judgment, (doc. 20), is due to be granted.

---

[1]Reference to a document number, ["Doc. ___"], refers to the number assigned to each document as it is filed in the court's record.

[2]Citation to page numbers refers to the page number assigned by the court's CM/ECF electronic filing system.

# I. SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and show that there is a genuine issue of fact for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)   citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)   showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1); *see also Clark*, 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial").

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "[C]ourts are required to view the facts and draw reasonable

inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007)(quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655(1962) (per curiam)).  Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference."  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(citing *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988)); *see also Scott*, 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## II.  STATEMENT OF FACTS

Defendant hired plaintiff in 1982.  (Doc. 22-1 at 17-18 and ex.1.)[3]  At the time of her termination in May 2009, plaintiff was assigned to work on the SAP Accounts Receivable project.  (*Id*. at 63-65.)  "SAP is a software vendor that [defendant] elected to utilize to replace, among other things, its accounting software.  Its implementation was a major undertaking of time, money and effort.  [Plaintiff] worked in establishing the Accounts Receivable training protocols and her role was unique on the SAP Team."  (Doc. 22-5 ¶ 3.) Plaintiff worked with Ginny Thornton, Maliqua Long, and Michelle Trawick, Accounting Department employees; plaintiff was not qualified to perform the work of these employees.

---

[3]Citation to page in plaintiff's deposition, doc. 22-1, refer to the pages of the original deposition.

(*Id.*; *see also* doc. 22-1 at 94-95; doc. 22-5 ¶ 3.)  The SAP Accounts Receivable project was "done" at the time defendant terminated plaintiff.  (Doc. 22-1 at 83.)

Defendant terminated plaintiff on May 6, 2009.  (Id. at 78.)  On that day, Benjamin Tew, plaintiff's supervisor, and Tara Davis, an employee in the Human Resources Department, told plaintiff that her position was eliminated as part of a reduction in force and she was being terminated.  (*Id*. at 65, 67.)  Twenty-four positions were eliminated at this time.  (Doc. 22-4 ¶ 8.)  The record does not contain any information regarding the other positions eliminated and employees terminated.  During this meeting, Davis gave plaintiff the Departure Agreement and General Release, which had been signed by John Thompson, EBSCO's Vice President and Director of Human Resources.  (*Id*. at 81 and ex. 8.)

The Agreement required plaintiff to release all claims against defendant in exchange for $30,900.  (*Id*., ex. 8 at D-0122.)  The Agreement stated:

> A.  General
>
> In consideration of this terminal departure payment you voluntarily agree . . . to release [defendant] from any and all claims or demands you have, or may have, or may have based on your employment with [defendant], or the termination of that employment . . . .
>
> This Release and Waiver includes a release of any rights or claims you may have under the Age Discrimination in Employment Act, as amended, and the Alabama Age Discrimination Act of 1997 both of which prohibit age discrimination in employment; Title VII of the Civil Rights Act of 1964, as amended, and the Civil Rights Act of 1991, which both prohibit discrimination in employment based on race, color, national origin, religion, or sex; . . . ; the American with Disabilities Act, which prohibits discrimination on the basis of disability; . . . ; and any other federal, state, or local laws or regulations prohibiting employment discrimination or otherwise regulating the terms and

4

conditions of employment. This release also includes any claims of retaliation of any kind.

>    B. Nonrelease of Future Claims
>
>    This release[,] to which you voluntarily agree, covers all claims or demands based on any facts or events, whether known or unknown, that occurred on or before the date you signed this Agreement. [Defendant] acknowledges that you have not released any rights or claims that may arise after the date this release and waiver is signed.
>
>    C. No Lawsuits
>
>    You promise never to file a lawsuit, complaint, or other claim asserting [a] cause of action within the scope of [the general release], nor to allow a lawsuit, complaint, or other claim within the scope of the release and waiver to be filed on your behalf. This provision does not preclude you from filing administrative charges with federal or state regulatory agencies, but it does prohibit you from filing a lawsuit on such claims.

(*Id*. at D-0123-24.) The Agreement gave plaintiff seven days to change her mind and rescind the Agreement; it said:

>    Following the day you sign the agreement, you will have an additional seven (7) days to notify the Company if you change your mind and wish to rescind it. This period cannot be shortened even by agreement. To exercise your right to rescind, you must provide written notice, within the seven-day period, to: John C. Thompson, Vice-President of Human Resources, . . . . Thereafter, the agreed severance payment will be commenced to you after expiration of the seven-day rescission period . . . .

(*Id*. at D-0123.)

Plaintiff testified that Davis told her to take the Departure Agreement home to read before signing it. Also, she testified that she and Davis discussed having the Agreement reviewed by an attorney: "She probably just said, you know, 'have an attorney review [the Agreement].'" (Doc. 22-1 at 82.) Plaintiff had two attorneys review the Agreement although

5

she contends they reviewed the document after she signed it. (Doc. 24 at 6[4] and n.3; *see also* doc. 22-1 at 39.)

Plaintiff signed the Departure Agreement on June 19, 2009, and returned it to Thompson. (*Id*., ex. 8 at D-0121, D-0126.) According to the Agreement, plaintiff had seven days or until June 26, 2009, to rescind the Agreement. (*Id*. at D-0122-23; doc. 22-1 at 95-96.)

After signing the Agreement, plaintiff changed her mind and decided she wanted to rescind the Agreement. (Doc. 22-1 at 83.) She testified:

> Q. . . . [Y]ou made the decision to rescind the agreement; correct?
>
> A. Yes.
>
> Q. Why is that?
>
> A. I spoke with Mr. Saxon.
>
> Q. . . . [W]hat was your reason for not moving forward with it?
>
> . . .
>
> A. It was – I just felt it was unfair what they did to me.
>
> Q. All right. Tell me what you thought was unfair.
>
> A. The fact that they demoted me, moved me around, put me on a project where I went and traveled. Once that project was done, they, more or less, terminated me. They knew I had surgery scheduled, and they terminated me. And I just felt like it was unfair. You don't work for a company for thirty-five years and get terminated for no reason.

---

[4]Citation to the page numbers in document 24 refer to the page numbers assigned by the court's CM/ECF electronic filing system.

(*Id.* at 82-83.)

Plaintiff mailed a letter to Thompson on June 25, 2009, which stated, "Please be advised that I am exercising my right to rescind my previously signed Departure Agreement dated June 19, 2009." (*Id*, ex. 9.) She testified:

> Q. It is your position in this litigation that you are not bound by the departure agreement you have signed; correct?
>
> A. I feel that I signed and did the proper thing for sending the notification to rescind the first letter that I sent based on the letter got there in a timely manner.
>
> Q. . . . [Y]ou know the only information we have about when it got [to defendant] is that it was untimely, that it was more than seven days, correct?
>
> . . .
>
> A. I don't think the agreement is a good agreement at this time, no.
>
> Q. And by not being a good agreement, you think it's an invalid agreement?
>
> A. Because I met the seven days by getting it in the mail and confirming with the postmaster that it would be at EBSCO the following day, just like everything else that I had sent to EBSCO and they have sent to me, it was a turnaround of one day.
>
> Q. So you understood that it had to be at EBSCO the next day; is that correct?
>
> A. To meet the seven days, yes.

(Doc. 22-1 at 92-94.)  Plaintiff's rescission letter was received by Thompson on June 29, 2009. (*Id.*, exs. 9 and 10.)

On July 6, 2009, Thompson wrote plaintiff that her recession was ineffective because he had not received it until June 29, 2009, three days after the rescission deadline. (*Id.*, ex. 11; doc. 22-6 ¶ 7.) Thereafter, Thompson wrote plaintiff, "As you know, the Departure Agreement specifies that I am to receive this notice within seven days of the signature. I received this on Monday, June 29, 2009, well after the June 26 deadline. Therefore, the Departure Agreement is in full force." (Doc. 22-1, ex. 11.)

On August 28, 2009, plaintiff filed a Charge of Discrimination with the EEOC. (*Id.*, ex. 15.) In the Charge, plaintiff alleged that defendant had discriminated against her on the basis of her sex, age, and disability, and that it had retaliated against her. After the EEOC notified defendant that plaintiff had filed a charge, Thompson wrote plaintiff again. (*Id.*, ex 12.) In this letter, Thompson wrote:

> EBSCO is in receipt of the charge of discrimination you have filed with EEOC. I will not address the merits of your charge in correspondence with you.
>
> However, you seem to have some confusion about the status of the Departure Agreement. You acknowledge signing the agreement. You did attempt to rescind the agreement but your rescission was not timely.
>
> EBSCO remains prepared to pay to you the amount owed to you under the Departure Agreement. However, you did not reply to my letter of July 6, 2009, and the company has not, and will not, make payment as long as you evidence an intent not to honor your written commitment.
>
> In the event you bring a lawsuit against EBSCO, the company will assert the release as a complete defense. If you acknowledge that you are bound by the Departure Agreement, EBSCO will pay the release proceeds forthwith.

(*Id.*)

Plaintiff received a right-to-sue letter on February 3, 2010. (*Id*., ex. 16.) She filed the present case on May 3, 2010. (Doc. 1.)

### III. DISCUSSION

Defendant contends that it is entitled to judgment as a matter of law because the Departure Agreement and General Release, which was not rescinded by plaintiff's untimely letter, releases defendant from "any and all claims or demands [plaintiff has] based on [her] employment . . . or termination." (*See* doc. 21 at 18; doc. 22-1, ex. 8 at D-0123.) Plaintiff contends that she properly rescinded the Departure Agreement and General Release. (Doc. 24 at 16-18.)

The Departure Agreement and General Release allowed plaintiff seven days to notify defendant that she had "change[d] [her] mind and wish[ed] to rescind [the Agreement]." (Doc. 22-1, ex. 8 at D-0123.) The Agreement states, "To exercise your right to rescind, you must provide written notice, within the seven-day period to: John C. Thompson." (*Id*.) Plaintiff contends that the Agreement is ambiguous as to whether her notice of rescission must be received by defendant before the expiration of the seven-day period. (*See* doc. 24 at 17-18.) The court disagrees.

As quoted above, the Agreement required plaintiff to "provide written notice" to Thompson "within the seven-day period." This requirement is unambiguous. To rescind the Agreement after she signed it, plaintiff was required to "provide" – or to give – Thompson written notice before the seventh day. This requirement cannot be read, as plaintiff argues, to allow plaintiff to decide to rescind the Agreement within the seven-day period but not

9

provide or give notice of that decision to Thompson within the seven-day period. To be effective, Thompson had to have notice of plaintiff's decision to rescind the Agreement before the end of the seven-day period. Therefore, the court finds plaintiff's rescission of the Agreement was not effective.

In the alternative, plaintiff argues that her waiver of her claims was not knowing. (Doc. 24 at 18.) She contends:

> Plaintiff signed the Departure Agreement. She then spoke with her attorney. Immediately thereafter, she mailed a rescission of that agreement. One crucial factor which Courts examine, in determining whether a waiver is knowingly and voluntarily executed, is whether a plaintiff "consulted an attorney . . . ." *Gormin v. Brown-Forman Corp.*, 963 F.2d 323, 327 (11th Cir. 1992). Here, Plaintiff's rescission was a direct result of her speaking with an attorney regarding the Departure Agreement. Such a drastic change (signature vs. rescission) would not have happened unless she did not fully understand the meaning of the agreement until after consulting counsel. As a result, her waiver was not knowing as to any of her claims, and the agreement cannot bar them.

(Doc. 24 at 18.) Plaintiff has not presented any evidence regarding what she did not understand about the Agreement. Indeed, in her deposition she testified that she decided to rescind the Agreement because she felt it was "unfair" based on defendant's discriminatory treatment; she not testify that she decided to rescind the Agreement because she had not signed the Agreement knowingly and voluntarily. The court cannot agree with plaintiff's argument that she must have decided to rescind the Agreement because she did not understand it. Indeed, the inference arising from plaintiff's decision to rescind the Agreement after contacting an attorney is that she was told she could get a better deal if she

sued for discrimination than the $30,900, offered as severance package. This is the inference supported by plaintiff's deposition testimony.

Nevertheless, "When a termination agreement contains a waiver of the employee's age discrimination claim, the Older Workers Benefit Protection Act (OWBPA), 29 U.S.C. § 626(f), requires that the employer establish that the waiver is 'knowing and voluntary.' *Id*. § 626(f)(3); *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006)." *Wells v. Xpedx*, 319 Fed. Appx. 798, 800 (11th Cir. 2009)(unpublished).

> In determining whether a release was knowingly and voluntarily executed, courts look to the totality of the circumstances. Factors that guide a court include:
>
>> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.
>
> *Beadle v. City of Tampa*, 42 F.3d 633, 635 (11th Cir.), *cert. denied* 515 U.S. 1152 (1995); *see also Gormin v. Brown-Forman Corp.*, 963 F.2d 323, 327 (11th Cir.1992).

*Puentes v. United Parcel Service, Inc.*, 86 F.3d 196, 198 (11th Cir. 1996). These factors weigh in favor of a finding that plaintiff knowingly and voluntarily signed the Departure Agreement.

Plaintiff graduated high school and has taken college classes. She worked for defendant for approximately 35 years. She had the Agreement for over a month before she signed it. The terms of the Agreement are clear. Defendant told plaintiff to have an attorney

review the Agreement. Finally, the Agreement provided plaintiff $30,900, "in addition to any payments [she] may otherwise [have been] entitled to under [defendant's] policies" for the release of her claims. (Doc. 22-1, ex. 8 at 53.

These factors compel a finding that plaintiff knowingly and voluntarily signed the Agreement. The fact that she decided to rescind the Agreement does not rebut this finding; it merely shows that she changed her mind.

The court finds the evidence is undisputed that plaintiff, knowingly and voluntarily, signed the Departure Agreement and General Release. Pursuant to the terms of that Agreement, plaintiff released her right to file a lawsuit raising her employment discrimination claims based on her employment and ultimate termination. The court finds this release is binding on plaintiff, and, therefore, her claims against defendant are due to be dismissed.[5]

Based on the foregoing, defendant's Motion for Summary Judgment, (doc. 20), will be granted and plaintiff's claims will be dismissed.

## **CONCLUSION**

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law. An Order granting

---

[5] Even if the Departure Agreement and General Release were not binding on plaintiff, defendant would be entitled to judgment as a matter of law. The court will not, however, go through the analysis of the merits of each of plaintiff's claims.

defendant's Motion for Summary Judgment will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 15th day of November, 2011.

_____
SHARON LOVELACE BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE